38985.   McDANIEL v. EMPLOYERS MUTUAL
LIABILITY INSURANCE COMPANY *et al.*

DECIDED SEPTEMBER 6, 1961.

*Clarence J. Jackson,* for plaintiff in error.

*Smith, Swift, Currie, McGhee & Hancock, Frank M. Swift, Glover McGhee,* contra.

FELTON, Chief Judge.   ■   The findings of fact of the director, which the plaintiff in error contends are but a bare conclusion unsupported by facts, consists only of the statement, "I find that the claimant has failed to show that her decedent suffered an accident arising out of and in the course of his employment which either caused or contributed to his death." *Code* § 114-707 provides in part that "the award, together with a

statement of the findings of fact and other matters pertinent to the questions at issue, shall be filed with the record of the proceedings." "A statement of the findings is necessary in order that the losing party may intelligently prepare his appeal and that the cause may thereupon be intelligently reviewed. This requirement contemplates a concise but comprehensive statement of the cause and the circumstances, or controlling facts, of the accident as the commission shall find it in truth to have occurred. [cases cited]. It is not enough to state, merely as a conclusion, in the language of the statute, that the injury is found to have arisen out of and in the course of the employment. [cases cited]." *Southeastern Exp. Co. v. Edmondson,* 30 Ga. App. 697, 699 (119 SE 39). This holding is further clarified by a later case which holds that it is not improper for the commission to give its conclusion in the language of the statute, where the findings of fact *as stated* are sufficient to justify such conclusion, but that "a mere statement that the commission finds that the injury arose out of and in the course of the employment is not such a finding of fact as would justify an award, when it stands *unsupported by any other findings of fact* to justify it as a conclusion." (Italics ours). *American Mut. Liab. Ins. Co. v. Hardy,* 36 Ga. App. 487, 490 (137 SE 113).

As to the effect of an insufficient statement by the board of its findings, the *Southeastern* case, supra, holds that ". . . it is not for that reason required absolutely that the case shall be remanded for a hearing de novo, but it may be merely recommitted, in order that the commission may state its findings upon the evidence previously taken. [cases cited]." The court then added, by way of obiter dictum, that ". . . even this may not be necessary in a case where the facts as disclosed by the record are undisputed." *Southeastern Exp. Co. v. Edmondson,* 30 Ga. App. 697, 699, supra. This last statement seems to be the logical result in a case such as the one sub judice. The law does not require the doing of a useless act, and to recommit the case so that the board might state its findings upon the evidence previously taken, would cause unnecessary delay if the facts as disclosed by the record are undisputed and the evidence demands the award made by the board.

■ The evidence was substantially as follows: The deceased was employed by Lockheed Aircraft Corp. as a lathe machinist, and his duties included the tightening of a chuck, which required substantial strength. Three days before his death, he wrenched his shoulder in this operation, and he took the next day off from work, complaining of pain in his shoulder. The day before his death, deceased returned to work, but complained of "indigestion." On March 6, 1959, the day of his death, he became nauseated. Upon his arrival at home that evening, his wife took him to the doctor when he developed pain in his elbows, vomiting and turned a "peculiar color." He died at about 10:30 p.m., during the examination by the doctor, who diagnosed the cause of death as coronary thrombosis. There was evidence that the deceased had been under certain emotional strain in relation to his job security, lack of work in the shop, and his relations with his supervisors. Decedent had no history of heart trouble prior to his alleged injury on March 3, 1959, but had been under treatment by a chiropractor for some months for a back strain sustained at home. While there was some medical testimony to the effect that the exertion or strain on the job by the deceased *might have* contributed to the heart attack, there was also medical testimony by a heart specialist to the effect that there was no causal connection and that the attack developed from a pre-existing heart disease. The following testimony of the physician who was examining deceased at the time of his death indicates his opinion as to the causal connection: "Q. Doctor, if this hypothetical man's pains started on a day while he was—started on a Tuesday were commenced shortly after he had wrenched his shoulder tightening a nut with a wrench, would you feel that the onset of this condition had any connection with that strain? A. That's always a hard question. I'll have to answer it this way: that any exertion is one of the causes of precipitating heart attack in any textbook of medicine. Q. Then it is a possibility that the strain could have commenced the onset of this thrombosis? A. It certainly is a possibility." Cross-examination. "Q. Assuming that this man did have a heart attack, the cause of this heart attack is just purely and simply a matter of speculation; is that correct?

A. That's right, sir." The physician's testimony · then, was that there was a *"possibility"* of causal connection between the strain and the attack which caused death, and that the cause of death was merely *"speculative."* The following are excerpts from the testimony of a "heart specialist," or internist: "Here is a man who had a heart attack because, if my diagnosis is correct, he had arteriosclerosis of the coronary· artery and as his disease progressed to the point where he had a heart attack, he had the attack and this was independent of any ordinary activity that he might have had. . . I don't think that any of the ordinary emotions that a man might have during the day with his work, that or even emotions of stress or anger which did not precipitate an immediate, fatal attack, would be thought to have any bearing on an attack occurring some hours later in the evening. . . You can't say which things precipitate it except that if he hadn't had the arteriosclerosis of the coronary artery he couldn't have had a myocardial infarction."

"The burden of proof is on the claimant in cases arising under the Workmen's Compensation Act to establish the fact that the employee has sustained an accidental injury such as is contemplated by the act." *Rivers v. Travelers Ins. Co.,* 93 Ga. App. 779 (1) (92 SE2d 818). An injury which aggravates a pre-existing disease is compensable where such increased result would not have occurred except for the injury. *Pruitt v. Ocean Accident &c. Corp.,* 48 Ga. App. 730 (173 SE 238). Where the alleged injury is claimed to have been precipitated by job exertion, the evidence must show that the exertion was such that, when considering all other facts of the case, a natural inference through human experience would be raised to indicate that the exertion contributed to the injury, or the medical testimony given must be that the exertion *was* sufficient to precipitate the injury. *Callaway Mills Co. v. Hurley,* 100 Ga. App. 781 (112 SE2d 320); *Hoffman v. National Surety Corp.,* 91 Ga. App. 414 (85 SE2d 784). Inasmuch as death did not occur until three days after the alleged exertion on the job, there is not such a "natural inference through human experience" raised to indicate that the exertion contributed to the injury, therefore it becomes solely a medical question which in this case could be answered

only by competent medical testimony based at least on *reasonable probability*. In *U. S. Cas. Co. v. Kelly*, 78 Ga. App. 112, 116 (50 SE2d 238) this court said: "The distinguishing features between this and the *Woodruff* case [67 Ga. App. 554, 21 SE2d 298] are numerous, as a careful reading of that case will show. The distinction of controlling importance, however, is that in that case the most that could be said of the testimony in favor of the claimant was that the injury *could* have been a factor in the death, whereas, here the doctors testified that such an injury *would* aggravate the heart condition of the deceased. As there used, the word 'could' merely expresses 'a contingency that may be possible' and nothing more. Webster's New International Dictionary (2d ed., 1934). 'Would' on the other hand means *necessarily will* and expresses an element of certainty far greater than that expressed by 'could'; and testimony that the injury would cause an aggravation is sufficient to sustain the award." "It appears to be well settled that medical testimony as to the possibility of a causal relation between a given accident or injury and the subsequent death or impaired physical or mental condition of the person injured is not sufficient, standing alone, to establish such relation. By testimony as to possibility is meant testimony in which the witness asserts that the accident or injury 'might have', 'may have', or 'could have' caused, or 'possibly did' cause the subsequent physical condition or death or that a given physical condition (or death) 'might have', 'may have', or 'could have' resulted or 'possibly did' result from a previous accident or injury—testimony, that is, which is confined to words indicating the possibility or chance of the existence of the causal relation in question and does not include words indicating the probability or likelihood of its existence." 135 A.L.R. 517. The testimony of the general physican was of this nature, i.e., indicating the mere possibility rather than the probability of the causal relation, and the testimony of the heart specialist expressed more certainty as to the lack of any causal relation. Cases in which evidence in addition to "could" or "possibly could," etc., testimony, authorizes an award of compensation are distinguishable by the fact of the additional testimony. There is no additional testi-

mony in this case. When the award is against the claimant, the judge of the superior court, as well as this court, in reviewing the award must accept the evidence most favorable to the defendant, since the claimant had the burden of proof. *Glens Falls Indem. Co. v. Sockwell,* 58 Ga. App. 111, 114 (197 SE 647); *Merry Bros. Brick &c. Co. v. Holmes,* 57 Ga. App. 281 (195 SE 223). Under this view of the evidence, then, there was sufficient evidence to demand the award of the board denying compensation. This being so, the insufficiency of the board's finding does not, under division 1 of this opinion, necessitate a recommittal of the case to the board for a more complete statement of its findings.

Accordingly, the judge of the superior court did not err in affirming the decision of the State Board of Workmen's Compensation denying benefits to the claimant.

*Judgment affirmed. Bell and Hall, JJ., concur.*