A00A2265. PHILLIPS CORRECTIONAL INSTITUTE et al.
v. YARBROUGH.
(548 SE2d 424)

RUFFIN, Judge.

Jeffrey Yarbrough worked as a prison guard at Phillips Correctional Institute. While on duty, Yarbrough suffered a cardiac dysrhythmia and died. Yarbrough's widow claimed entitlement to workers' compensation benefits, alleging that her husband's death was caused by job-related stress. Following a hearing on the matter,

the State Board of Workers' Compensation awarded benefits, and the award was affirmed by the superior court. We granted the employer's application for discretionary appeal, and, for reasons that follow, we affirm.

In reviewing an award of workers' compensation benefits, we construe the evidence in the light most favorable to the prevailing party, and we will affirm the award if there is any evidence to support it.[1] So viewed, the evidence shows that, on May 11, 1997, Jeffrey Yarbrough arrived at work at approximately 5:45 a.m. Yarbrough, who was assigned to the mental health unit, went from cell to cell to check on the inmates. He then served the inmates breakfast. While performing his job, Yarbrough walked up and down several flights of stairs. After serving breakfast, Yarbrough was sweating profusely and complained to a co-worker that he did not feel well. He then collapsed and was taken to Gwinnett Medical Center where he was pronounced dead. An autopsy attributed Yarbrough's death to cardiac dysrhythmia secondary to an enlarged heart.

Yarbrough's widow, as claimant, sought payment of workers' compensation benefits, asserting that her husband's death arose out of and in the course of his employment. At the administrative hearing, Dr. Kris Sperry and Dr. A. Gordon Brandau provided expert opinions regarding the cause of Yarbrough's death. Both doctors agreed that Yarbrough's systemic hypertension coupled with his obesity caused him to have a severely enlarged heart, which predisposed him to sudden, lethal heart rhythm disturbances. The doctors disagreed, however, on whether Yarbrough's work was a contributing factor. According to Dr. Sperry, "but for the physical and mental stress [Yarbrough] experienced at work on that day, he should not have died at that time." Dr. Brandau, on the other hand, concluded that Yarbrough's death was solely attributable to the state of his heart.

In finding in favor of the claimant, the administrative law judge (ALJ) determined that, although Yarbrough "was certainly predisposed to a cardiac arrhythmia by his enlarged heart caused by his hypertension and his hyperlipidemia, . . . the greater weight of the evidence supports a finding that his work was a contributing precipitating factor." Thus, the ALJ concluded that Yarbrough sustained a compensable injury. On appeal, the employer argues that the evidence did not support the ALJ's finding of a compensable, work-related injury. We disagree.

---

[1] *Olde South Custom Landscaping v. Mathis*, 229 Ga. App. 316 (494 SE2d 14) (1997).

Pursuant to OCGA § 34-9-1 (4), an injury shall *not* include

> heart disease, heart attack, the failure or occlusion of any of the coronary blood vessels, stroke, or thrombosis unless it is shown by a preponderance of competent and credible evidence, which shall include medical evidence, that any of such conditions were attributable to the performance of the usual work of employment.

It is evident from this language that the legislature intended that the compensable heart injury be the exception rather than the rule. Under our workers' compensation system, however, determining whether such heart injury falls within this exception remains the function of the factfinder.[2]

As our Supreme Court has recognized, in "heart attack" cases, it often is

> difficult for the trier of fact to find the line between a noncompensable heart injury that is a symptom of an existing disease merely manifested during job exertion, and a compensable heart injury to which the job exertion was a contributing precipitating factor.[3]

Once the trier of fact has found that line, we must affirm if there is any evidence to support the factfinder's determination.[4] Here, Dr. Sperry's testimony provides such evidence.

The employer argues that, in order to find Yarbrough's death compensable, we must conclude that it is compensable as an aggravation of a pre-existing condition. According to the employer, the law does not permit recovery in workers' compensation for the aggravation of an underlying heart condition. Again, we disagree.

It is well settled that work need be only a contributing factor to a heart injury in order for that injury to be compensable.[5] In this case, there is some evidence that Yarbrough's work contributed to his death from his heart condition, and "[t]he fact-finding body must in this event remain the final arbiter of the compensability of the attack, and of whether the disability arose out of the employment as

---

[2] *Guye v. Home Indem. Co.*, 241 Ga. 213, 214-215 (244 SE2d 864) (1978).
[3] Id. at 215.
[4] See id.
[5] See *Sewell v. Bill Johnson Motors*, 213 Ga. App. 853, 855-856 (1) (446 SE2d 239) (1994); *Southwire Co. v. Eason*, 181 Ga. App. 708 (353 SE2d 567) (1987); *Carter v. Kansas City Fire &c. Ins. Co.*, 138 Ga. App. 601 (226 SE2d 755) (1976) (physical precedent only).

well as in the course of it."[6] Thus, we affirm.[7]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 21, 2001.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, Sartain, McKay & Crowell, Frank R. McKay*, for appellants.

*Mark Harper*, for appellee.

---

[6] *Cox v. Employers Mut. Liability Ins. Co. &c.*, 122 Ga. App. 659, 660-661 (178 SE2d 287) (1970).

[7] See *Eason*, supra at 709 ("Since there was competent and credible evidence to support the award of the ALJ, we must affirm.").